**KLEEBLATT, GALLER ABRAMSON, LLC**
25 Main Street
Hackensack, New Jersey 07601
(201) 342-1800

| UNITED STATES OF AMERICA | UNITED STATES OF AMERICA |
|---|---|

UNITED STATES OF AMERICA

*Plaintiff,*

vs.

EDWARD FEUER.

*Defendant.*

UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF
NEW YORK

# 07 Cr. 975

Hon. William H. Pauley, III

---

**BRIEF ON BEHALF OF DEFENDANT
IN SUPPORT OF MOTION TO SUPPRESS ALL STATEMENTS MADE BY
DEFENDANT AND ALL EVIDENCE SEIZED AS THE RESULT OF THE
UNLAWFUL SEARCH OF DEFENDANT'S WORK CUBILE, DESK, FILE CABINETS
AND SURROUNDING AREA AND MOTION IN LIMINE TO EXCLUDE ALL
PHOTOGRAPHS AND VIDEOS**

---

Richard P. Galler, Esq.
Kleeblatt, Galler & Abramson, L.L.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 342-1800

# TABLE OF CONTENTS

**PAGE**

**TABLE OF AUTHORITIES** ................................. iii

**STATEMENT OF FACTS** .................................... 1

**LEGAL ARGUMENT** ........................................ 3

**POINT I**
THE SEARCH OF MR FEUER'S CUBICLE DESK, FILE CABINET, PERSONAL PROPERTY AND SURROUNDING AREAS WAS UNLAWFUL BECAUSE THE CONSENT SEARCH FORM SIGNED BY MR. FEUER WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY EXECUTED AND THEREFORE ANY AND ALL EVIDENCE SEIZED AS A RESULT OF THE UNLAWFUL SEARCH SHOULD BE SUPPRESSED.

**POINT II** ............................................. 7
ANY AND ALL STATEMENTS MADE BY MR. FEUER MUST BE SUPPRESSED AS A RESULT OF THE VIOLATION OF MR. FEUR'S CONSTITUTIONAL RIGHT TO REMAIN SILENT AND RIGHT TO COUNSEL

**POINT III** ............................................. 7
THE PROSECUTION HAS NOT MET IT'S BURDEN BEYOND A REASONABLE DOUBT THAT THE ALLEGED PHOTOGRAPHS ARE THAT OF ACTUAL CHILDREN AND NOT MORPHED, PHOTOSHOP, OR VIRTUAL IN NATURE, AND THEREFORE, SHOULD BE SUPPRESSED AND NOT PUBLISHED TO THE JURY

**POINT IV** ............................................. 9
MR. FEUER DID NOT KNOWINGLY POSSESS CHILD PORNOGRAPHY AND THEREBY HIS MENTAL STATE WAS INNOCENT

**CONCLUSION** ........................................... 11

## TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE**

State . Presha, 163 N.J. 304 (2000) quoting Miranda v Arizona,
384 U.S. 436, 86 S. Ct. 1602 (1966)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

N.J. v. Miller, N.J. 393, (1978)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3,5

Moran v. Burbine, 475, U.S. 412,
106 S. Ct. 1135, 89 L.Ed. 2d 2d 410 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . .    3

Lawrence v. Artuz, 91F. Supp.2d, 528 (E.D.N.Y. 2000). . . . . . . . . . . . . . .    3

Missoni vs. Siber, 542 U.S. 600;
124 S. Ct. 2601; 159 L. Ed., 2d 643 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . .    4

United States v. Siraj. 424 F. Supp. 2d 509, 2006, (E. D. N.Y. 2006) . . . . .    6

State v. Rodriguez, 172 N. J. 117 (2002).  . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

Blackburn v. Alabama, 361 U.S. 199, 280 (1960)  . . . . . . . . . . . . . . . . . . . .    7

United States v. Sims, 220 F. Supp. 2d 1222 (2002)  . . . . . . . . . . . . . . . . . .    7,8

U.S. v. Hiltin, 363 F. 3d 58; (2004) U.S. Upp . . . . . . . . . . . . . . . . . . . . . . . .    8

Free Speech Coalition v. Janet Reno, 198 F. 3d 1083, 1999, U.S. App. . . .    9

United States v. Tucker, 150 F. Supp. 2d. 1263; (2001)  . . . . . . . . . . . . . . .    9

United States v. Kuchinski;; 469 F. 3d 853 (2006) . . . . . . . . . . . . . . . . . . . .    10

## STATEMENT OF FACTS

1.  On or about June 2007, special agents with the United States General Services Administration (hereinafter "GSA") was notified through Interpol that the German Officials received information and a complaint of and unlawful child pornography web-site "Charaokkee" that was being viewed by a computer registered to the United Stated Government.

2.  After research by GSA, it was determined that the I.P. address was coming from two conflicting addresses, one being in Washington D.C,, and the other address in Long Island, New York.

3.  After further investigation GSA determined that neither address was correct and now the I.P. address appeared to be located in 26 Federal Plaza, New York, New York.

4.  Still, further investigation by the "GSA" led them to begin to surveil the defendant, Edward Feuer, for allegedly downloading child pornography on his work computer.

5.  This investigation of the defendant led the "GSA" on or about June 25, 2007 to use its internal computer network to set up an additional computer to monitor all screen activity on Mr. Feuer's computer during the course of his work day.  However, although GSA began to monitor Mr. Feuer's computer on or about June 25, 2007, recordings of such activity by Mr. Feuer only began between July 6, 2007 and July 20, 2007.

6.  The agents allegedly observed Mr. Feuer surfing the internet for child pornography.

7.  On or about July 20, 2007, GSA agents approached Mr. Feuer at work and arrested him. The agents seized Mr. Feuer's work computer and thereafter conducted a search of Mr. Feuer's cubicle, desk, file cabinets, personal belongings and surrounding area.  This search and seizure was conducted after GSA agents had Mr. Feuer in custody, who had

1

never been in trouble with the law in his entire life, execute a consent search form, **(SeeExhibit C).**

8.    Agents questioned Mr. Feuer who stated that he "did not want to answer any questions and specifically questions related to the internet."

9.    Agents, however, continued to question Mr. Feuer about the internet and email accounts, although Mr. Feuer previously stated he did not want to answer any questions especially questions pertaining to the internet.

10.   Agents persistently told Mr. Feuer that they "had knowledge of some of his habits on the internet" provoking Mr. Feuer to allegedly state "I guess you know everything". **(Exhibit B** U.S. Department of Justice Correspondence to David Patton, Esq. dated November 7, 2007, pg.1)

11.   Thereafter, a subsequent search was conducted by "GSA" of Mr. Feuer's computer and on or about October 19, 2007 Indictment 07 Cr. 975 was handed up indicting Mr. Feuer of one count of possession of child pornography. **(Exhibit A, Indictment)**

12.   There has been no plea resolution in the instant matter and the case is now scheduled for trial on May 27, 2008.

## LEGAL ARGUMENT
### POINT I

**THE SEARCH OF MR FEUER'S CUBICLE DESK, FILE CABINET, PERSONAL PROPERTY AND SURROUNDING AREAS WAS UNLAWFUL BECAUSE THE CONSENT SEARCH FORM SIGNED BY MR. FEUER WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY EXECUTED AND THEREFORE ANY AND ALL EVIDENCE SEIZED AS A RESULT OF THE UNLAWFUL SEARCH SHOULD BE SUPPRESSED.**

It is well settled law since Miranda that for a confession or statements to be admissible as evidence, prosecutors must prove beyond a reasonable doubt that the suspects' waiver was knowingly, intelligently and voluntary in light of all the circumstances, State . Presha, 163 N.J. 304 (2000) quoting Miranda v Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

In determining the issue of knowingly, intelligently and voluntary, the court should consider the characteristics of the suspect. Some of the relevant factor include the suspects age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved. N.J. v. Miller, N.J. 393, (1978) As suspect's previous encounter with the law has been mentioned as an additional relevant factor. I.d.

In State v. Miller, the Court in determining the voluntariness of the defendant's waiver, put a great emphasis on the fact that the defendant was "quite familiar" with his Miranda rights due to his prior experience with the law. I.d. at 403

Additionally to be valid, a "waiver" must have been made with a full awareness of both the nature of the right being abandoned an the consequences of the decision to abandon it. Moran v. Burbine, 475, U.S. 412, 106 S. Ct. 1135, 89 L.Ed. 2d 2d 410 (1986); Lawrence v. Artuz, 91F. Supp.2d, 528 (E.D.N.Y. 2000).

3

In the instant case, Mr. Feuer at the time of his arrest was a 49 year old man and although he has some college education, Mr. Feuer has no previous experience with the law and has no "familiarity" with his Miranda rights, which clearly distinguishes this case from that of Miller.

Mr. Feuer lives with his elderly parents and has almost all his life. He has no wife, girlfriend, nor children and stays to himself socially. He has no friends to speak of nor does he interact with any co-workers outside the work environment. He has anxiety attacks and is socially inept.

Mr. Feuer has been prescribed anxiety medication as well as depression medication in the past for these conditions.

Mr. Feuer has no cell phone nor home computer and his daily routine consisted of going to work and caring for his elderly parents whose health is failing.

Mr. Feuer only initialed the Miranda waiver form and consent to search form because of his lack of knowledge with law enforcement and the criminal system coupled by his extremely simple lifestyle. Mr. Feuer felt he was compelled to do so and therefore the waivers were not given knowningly, intelligently and voluntarily.

Just because Mr. Feuer initialed and executed the waiver and consent form, does not automatically render his waiver knowingly, intelligently and voluntarily. It would be absurd to think that mere recitation of the literary suffices to satisfy Miranda in every conceivable circumstance. The inquiry is simply whether the warning reasonable convey to a suspect his rights a required by Miranda. <u>Missoni vs. Siber</u>, 542 U.S. 600; 124 S. Ct. 2601; 159 L. Ed., 2d 643 (2004).

Mr. Feuer's complete lack of knowledge of the legal system, law enforcement and life experiences as a whole rendered him incapable of waiving his rights intelligently, knowingly and voluntarily and the mere initializing and recitation of these rights clearly do not constitute the

4

admissibility of any statement made by Mr. Feuer nor any evidence seized from his cubicle, desk, file cabinets, personal belongings and the surrounding area and therefore defendant's motion to suppress should be granted.

Mr. Feuer gave the inculpatory statements only after agents consistently and repeatedly question him even after he invoked his right to remain silent and his right to counsel by stating he did not wish to answer any questions and specifically questions pertaining to the internet, thus these statements are not Mr. Feuer's own free self determination and must be suppressed as they are inadmissable due to the violation of Mr. Feuer's constitutional rights.

In State v. Miller, Chief Justice Warren had said: "the adhorrence of society of the use of the involutary confessions does not turn alone on their inherent untrustworthiness. It also turns on the deep rooted feeling that the police must obey the law while enforcing the law; that in the end, life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves. State vs. Miller, N.J. 392, 410 (1978).

The Motion to Suppress the statements and search obtained in violation of Mr. Feuer's constitutional rights should be granted and any and all evidence should be excluded as tainted.

Mr. Feuer repeatedly stated to the law enforcement official that he did not want to answer any questions and specifically any questions relating to the internet.

However, instead of stopping the interrogation at that time and allowing Mr. Feuer to call an attorney, law enforcement agents continued to consistently ask Mr. Feuer questions most of which pertained to his internet use.

Mr. Feuer clearly and repeatedly told the agents that he did not want to answer any questions and specifically any questions pertaining to the internet, Mr. Feuer, was invoking his 5th Amendment and 6th Amendment rights to remain silent and his right to counsel, hence,

the agents therefore should have ceased the interrogation to permit Mr. Feuer the opportunity to call his attorney.

The Court must conduct an objective inquiry into whether a reasonable officer under the circumstances would understand the defendant's statement to be a request for an attorney United States v. Siraj. 424 F. Supp. 2d 509, 2006, (E. D. N.Y. 2006). Where an individual makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel [,]" the officer may continue questioning, Id.

In the case at bar, Mr. Feuer clearly stated his refusal to answer any questions and specifically reiterated by telling the agent especially any questions pertaining to the internet.

The officer/agent under these circumstances could clearly understand that Mr. Feuer was not was not going to talk to him and was requesting counsel and therefore the officer should have ceased the interrogation.

As a result of the agent refusal to cease the interrogations after Mr. Feuer invoked his right to remain silent and right to counsel any and all statement made by Mr. Feuer should be suppressed.

## POINT II
### ANY AND ALL STATEMENTS MADE BY MR. FEUER MUST BE SUPPRESSED AS A RESULT OF THE VIOLATION OF MR. FEUR'S CONSTITUTIONAL RIGHT TO REMAIN SILENT AND RIGHT TO COUNSEL.

In <u>State vs. Rodriguez</u>, the Court recognized that, "as practical matter, citizens almost never feel free to end an encounter initiated by the police" <u>State v. Rodriguez</u>, 172 <u>N. J</u>. 117 (2002).

Interrogation of accused, who is ignorant of his rights, and who has been cut off from moral support, is not infrequently and effective technique of terror which will render a confessional statement involuntary, so that its use violates due process clause of the Federal Consitution. <u>Blackburn v. Alabama</u>, 361 U.S. 199, 280 (1960).

In the instant case Mr. Feuer did not feel free to refuse to sign the waiver and consent to search and because he has no prior knowledge and experience with the legal system, did so because he felt intimidated.

Therefore, Mr. Feuer's Miranda waiver and consent to search were both not given voluntarily, knowingly and intelligently and as such, any evidence seized from the unlawful search of Mr. Feuer's cubicle, desk, file cabinets, personal belongings and the surrounding cubicle area and any statements made must be suppressed as fruits of this unlawful search and defendant's motion to suppress should be granted.

## POINT III
### THE PROSECUTION HAS NOT MET IT'S BURDEN BEYOND A REASONABLE DOUBT THAT THE ALLEGED PHOTOGRAPHS ARE THAT OF ACTUAL CHILDREN AND NOT MORPHED, PHOTOSHOP, OR VIRTUAL IN NATURE, AND THEREFORE, SHOULD BE SUPPRESSED AND NOT PUBLISHED TO THE JURY

The government has the burden proving all elements of the crime charged. <u>United States v. Sims</u>, 220 F. Supp. 2d 1222 (2002). An element of possession and receipt of child pornography is: that the images possessed and received involved the sexual exploitation of

7

children. The government has the burden of presenting evidence that any of the visual depictions received by defendant involved the use of actual children engaging in sexually explicit conduct. Id.

In U.S. v. Sims, the government in essence shifted the burden to the defendant. In essence, the government argued that rather than having the burden of proving that the children in the visual depictions did not involve actual children or were altered in same way. Id.

The governments proposed burden shifting scheme is exactly the type of affirmative defenses argument that was criticized by the Free Speech Court, which stated that there may by "serious constitutional difficulties by seeking to impose on the defendant the burden of proving his speech is not unlawful.: Ibid.

> The Supreme Court has held:
>
> Where the defendant is not the producer
> Of the work, he may have not way of establishing
> The identity, or even the existence, of the actors.
> Ashcroft v. The Free Speech Coalition, et al,
> 535 U.S. 234, 122 S. Ct. 1389(2002)

The government is not required to prove a "negative"– that the visual depictions were not "morphed" or altered, but rather must prove "positive"–that the depictions involved real children. U.S. v. Sims, 220 F. Supp. 2d 1222; (2002).

In the instant case, Mr. Feuer is charged with one count of possession and receipt of child pornography. However, the government has not supplied the defendant with any expert forensic report, any identities or any proofs establishing the essential element that the depictions involve actual children.

The evidential burden on the government is not trivial. U.S. v. Hiltin, 363 F. 3d 58; (2004) U.S. Upp.

The government must present evidence proving that the child in the image was not confabulated, but real. I.d. The government must introduce relevant evidence in addition to the images to prove the children are real. The defendant is entitled to have this element proved affirmatively without entering any evidence to the contrary. Ibid.

Since the government in the case at bar, has failed to provide defendant any export reports, identities or other such proofs to establish actual children were depicted in the photographs, the unsubstantiated and unauthenticated photographs must be suppressed and not published to the jury.

The government may not criminalize possession of non-obscene sexually explicit images that appear to, but do not in fact, depict actual children. Id. No longer can a pornographic image be assumed to depict real children. Changing technology has superceded those precedents.

The articulated compelling state interests cannot justify the criminal proscription when no actual children are involved in the illicit images either by production or depiction. Free Speech Coalition v. Janet Reno, 198 F. 3d 1083, 1999, U.S. App.

Therefore, the pictures/videos should be suppressed and not published to the jury as a matter of law.

### POINT IV
### MR. FEUER DID NOT KNOWINGLY POSSESS CHILD PORNOGRAPHY AND THEREBY HIS MENTAL STATE WAS INNOCENT

18 U.S.C. 2252A(a)(5)(b) mandates that criminal liability can only be found in cases where the accused "knowingly possess" child pornography. 18 U.S.C. § 2252A(a)(5)(B)

Absent knowledge by a defendant that he was maintaining pornographic images on his computer, his mental state is innocent. United States v. Tucker, 150 F. Supp. 2d. 1263; (2001).

Where a defendant has knowledge about cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the

9

child pornography images located in those files, without some other indication of dominion and control over the images. United States v. Kuchinski;; 469 F. 3d 853 (2006).

..."to possess the images in the cache, the defendant, must, at a minimum, know that the unlawful images are stored on a disk or other tangible material in his possession. Ibid.

In U.S. v. Kuchinski, the Court held that because "there was no evidence that Kuchinski was sophisticated that he tried to get access to the cache files, or that he even knew of the existence of the cache files", ... it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images. To do so turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control. Id.

As in Kuchinski, Mr. Feuer, is not a sophisticated computer expert. Mr. Feuer does not even own a home computer and is not tech savvy by today's standards. Mr. Feuer did not know that a cache file existed nor what it was or does.

The cache file is an area of memory and disk space available to the browser software, when a person accesses a web page, his web browser will automatically (emphasis added) download that page into his internet files, so that when the site is revisited the information will come up much more quickly than it would have if it had not been stored on the computer's own hard drive. Id. At 22.

Since Mr. Feuer is an "unsophisticated" computer user he had absolutely no idea and knowledge of the existence of the cache file and therefore had no knowledge as to possession of alleged stored child pornography and therefore the charge of possession to child pornography should be dismissed.

## CONCLUSION

For all the foregoing reasons, the charge of possession should be dismissed. However, if the Court finds reason to the alternative, the statements, and evidence seized by the unlawful search should be suppressed and the pictures should not be published to the jury as based on the governments failure to prove all elements of the charge specifically the essential evidence as to actual children depicted as it would be highly prejudicial to Mr. Feuer.

The redress in light of unconstitutional misconduct requires that all statements elicited and made by Mr. Feuer and any evidence seized by Mr. Feuer must be excluded and suppressed and characterized as fundamentally unfair and grossly violative of Mr. Feuer's constitutional rights.

Based on the foregoing argument, defendant, Edward Feuer, respectfully requests that his Motion to Suppress all statements made by defendant and any and all evidence seized be granted in its entirety as a matter of law.

KLEEBLATT GALLER ABRAMSON, LLC

By:_____
RICHARD P. GALLER

Dated: 5/9/08

11

**KLEEBLATT, GALLER ABRAMSON, LLC**
25 Main Street
Hackensack, New Jersey 07601
(201) 342-1800

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>*Plaintiff,*<br><br>vs.<br><br>**EDWARD FEUER.**<br><br>*Defendant.* | **UNITED STATES OF AMERICA**<br>**SOUTHERN DISTRICT OF**<br>**NEW YORK**<br><br>**# 07 Cr. 975**<br><br>**Hon. William H. Pauley, III**<br><br><u>**CERTIFICATION OF EXHIBITS**</u> |

I, Richard P. Galler, attorney at law, fully hereby certify and say:

1.    I am an associate in the law firm of Kleeblatt, Galler, Abramson, L.L.C., counsel for the defendant(s), in the within matter. I make this Certification in support of defendants, Motion to Suppress.

2.    The following are true and exact copies of the exhibits referenced in the Statement of Undisputed Material Facts.

      (1) Exhibit "A" -    Indictment

      (2) Exhibit "B" -    US Dept. Of Justice correspondence to David Patton, Esq., dated November 7, 2007, page 1.

      (3) Exhibit "C" -    Consent Search Form

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

KLEEBLATT GALLER ABRAMSON, LLC

By: _____
           RICHARD P. GALLER

12

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

EDWARD FEUER,

Defendant.

### INDICTMENT

07 Cr.

(18 U.S.C. § 2252A(a)(2))

_MICHAEL J. GARCIA_
United States Attorney.

A TRUE BILL

_Foreperson._

Oct. 19, -07

R C
10/19/07

Indictment filed, Judge Pauley
assigned.

7. Maas, USMJ

2

Approved: _____
          DAVID A. O'NEIL                    07 MAG    1178
          Assistant United States Attorney

Before:   THE HONORABLE RONALD L. ELLIS
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :    **COMPLAINT**

          - v. -                  :    Violation of 18 U.S.C.
                                       § 2252A(a)(5)
EDWARD C. FEUER,                  :
                                       COUNTY OF OFFENSE:
          Defendant.              :    MANHATTAN

- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          JOSEPH DATTORIA, JR., being duly sworn, deposes and says
that he is a Criminal Investigator with the Office of Inspector
General, General Services Administration ("GSa") and charges as
follows:

### COUNT ONE

          From at least in or about June 2006 through at least in
or about July 2007, in the Southern District of New York, EDWARD C.
FEUER, the defendant, unlawfully, willfully, and knowingly, did
possess and attempt to possess books, magazines, periodicals,
films, videotapes, computer disks, and other material that
contained images of child pornography, as that term is defined in
Title 18, United States Code, Section 2256(8)(A), in a building
owned by, leased to, and otherwise used by and under the control of
the United States Government, and that had been mailed, and shipped
and transported in interstate and foreign commerce by any means,
including by computer, to wit, FEUER downloaded images of child
pornography via the Internet to his Government computer in 26
Federal Plaza in Manhattan.

          (Title 18, United States Code, Sections 2252A(a)(5)(A) and(B)
                         and 2252A(b)(2).)

          The bases for my knowledge and for the foregoing charges
are, in part, as follows:

          1.    I am a Criminal Investigator with the GSA and have
been so employed for approximately 6 months.  I have been personally
involved in the investigation of this matter.  This complaint is

3

based upon my conversations with other law enforcement officials and witnesses and my examination of reports and records. Because this complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2.    On or about June 12, 2007, I was contacted by other officers at GSA, who informed me that they had received a complaint from German law enforcement officers regarding downloading of child pornography. According to the GSA officers, an IP address of a GSA employee at 26 Federal Plaza in Manhattan, New York, had been used to download child pornography from a German website.

3.    I received from GSA a list of the images that were downloaded using the IP address for a period of seven days, from on or about June 12, 2006 to on or about June 19, 2006. Approximately 124 images were downloaded during that one-week period. I reviewed copies of the images, which included, among other things:

    a.    An infant that appears to be approximately six months old lying in a bathtub with an adult male's erect penis in its mouth;

    b.    An adult male holding the penis and testicles of an infant boy in a manner intended to portray an erection;

    c.    An adult male standing naked with an erection above a boy who appears to be approximately seven years old.

4.    On or about June 28, 2007, I asked the National Center for Missing and Exploited Children to conduct a search of the images. The Center reported to me that at least six of the images involved known victims of child pornography.

5.    I conducted a search for the IP address and determined that it was assigned to EDWARD C. FEUER, the defendant, who has been a GSA employee since approximately 1987 and currently works as a Contract Specialist.

6.    On or about June 25, 2007, the GSA Information Technology department set up a computer viewing system that permitted me to watch every activity or keystroke on the computer linked to the IP address assigned to EDWARD C. FEUER, the defendant. Using that system, I have viewed a computer monitor that displays exactly the same information as the monitor that FEUER is viewing.

7.    From on or about June 25, 2007, through July 20, 2007, using the monitoring system, I watched and recorded

2

4

(beginning on or about July 6, 2007) the computer activity of EDWARD C. FEUER, the defendant. During that time, I saw FEUER view at least 150 images of child pornography, including the following:

      a.      A 19-minute video portraying two boys, approximately ten years old, appearing to engage in anal sexual intercourse at the direction of the camera operator;

      b.      Images of boys between approximately nine and fourteen years of age engaging in oral sex with each other; and

      c.      Images of boys under fourteen years of age masturbating.

      8.  I know that EDWARD C. FEUER, the defendant, was the individual using the computer I was monitoring at the relevant times for several reasons:

      a.      FEUER repeatedly switched back and forth between viewing child pornography and conducting work activities, including emailing other GSA employees using his GSA email address;

      b.      Every morning, and on return from breaks, FEUER logged in to the computer past a warning banner, stating that the computer is GSA property, may be used only for official purposes, and is subject to monitoring. FEUER used his own name and a password he selected to log in to the computer; and

      c.      I personally walked by the computer while it was being monitored and saw FEUER sitting alone in his cubicle at the computer.

3

5

WHEREFORE, deponent prays that a warrant be issued for the arrest of EDWARD C. FEUER, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

JOSEPH LATTORIA
CRIMINAL INVESTIGATOR
OFFICE OF INSPECTOR GENERAL
GENERAL SERVICES ADMINISTRATION

Sworn to before me this
20th day of July 2007

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

RONALD L. ELLIS
United States Magistrate Judge
Southern District of New York

4

6

**KLEEBLATT, GALLER ABRAMSON, LLC**
25 Main Street
Hackensack, New Jersey 07601
(201) 342-1800

| |
|---|
| **UNITED STATES OF AMERICA**<br><br>*Plaintiff,*<br><br>**VS.**<br><br>**EDWARD FEUER.**<br><br>*Defendant.* |

**UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF
NEW YORK**

**# 07 Cr. 975**

**Hon. William H. Pauley, III**

 

    **THIS MATTER** having been opened to the Court upon application of Richard P. Galler, Esq., of the law firm of Kleeblatt, Galler, Esqs., attorneys for the defendant, Edward Feur, upon notice to Mark Lanpher, US Attny and the Court having considered the moving papers filed and all opposition noted thereto, and for good cause having been shown,

    **IT IS** on this     day of      , 2008;

    **ORDERED** that all statements made by defendant as a result of the unconstitutional interrogation be and are hereby suppressed; and it is further

    **ORDERED** that any and all evidence seized as a result of the unconstitutional search of Mr. Feuer's cubicle file cabinet, surrounding area and personal belongings be and are hereby suppressed; and it is further

    **ORDERED** that an and all photo evidence should be suppressed and not be published to the jury based on the government's failure to prove the essential element of actual children being portrayed and depicted; and it is

FURTHER ORDERED that a copy of this order be served upon all parties within _____ days of the date of this order.

_____
Honorable William H. Pauley, III.