UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

        -v.-                      :      07 Cr. 975 (WHP)

EDWARD FEUER,                     :

              Defendant.          :

- - - - - - - - - - - - - - - - - x


MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S
MOTION TO SUPPRESS AND MOTIONS IN LIMINE


                         MICHAEL J. GARCIA
                         United States Attorney for the
                         Southern District of New York
                         One St. Andrew's Plaza
                         New York, New York 10007


MARK LANPHER
DANIEL STEIN
Assistant United States Attorneys
     -Of Counsel-

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the pretrial motions of Edward Feuer, the defendant, filed with the Court on May 9, 2008.

The defendant seeks to (1) suppress evidence and statements obtained by arresting officers, (2) preclude publication of images of child pornography to the jury, and (3) dismiss the charges against him.  The defendant's motions are without merit and should be denied without a hearing.

## BACKGROUND

Edward Feuer is charged in Indictment 07 Cr. 975 (WHP) with unlawfully, willfully, and knowingly receiving child pornography that had been mailed, shipped, and transported in interstate and foreign commerce by downloading images of child pornography to a computer in the Southern District of New York, in violation of Title 18, United States Code, Section 2252A(a)(2).

The Government expects the evidence at trial to show that, in or about June 2007, special agents of the United States General Services Administration ("GSA"), Office of Inspector General, began investigating Edward Feuer for downloading child pornography on his Government computer.  Beginning on or about June 25, 2007, GSA used its internal computer network to set up a second computer to monitor all screen activity on Feuer's computer.  This allowed GSA agents to view what appeared on

2

Feuer's screen by transmitting an image of that screen approximately three times per second. GSA agents thus monitored Feuer's computer usage, and they recorded such activity between July 6, 2007, and July 20, 2007. The agents observed, among other things, Feuer surfing the Internet for child pornography; Feuer receiving images of child pornography; and Feuer deleting his Internet browsing history and other files from his Internet cache.

On July 20, 2007, GSA agents arrested Feuer at his cubicle. After Feuer executed a written consent to search form, agents searched his cubicle and seized his Government-issued computer. A subsequent forensic search of Feuer's computer revealed, among other things, hundreds of images containing child pornography, records of Feuer's Internet browsing history, records of specific Internet searches (on Google, Yahoo!, and other search engines) using terms such as "illegal chat rooms" and "child porn found in trash bin," and e-mail correspondence between Feuer and other individuals. GSA agents also interviewed Feuer, after he executed a written waiver of his <u>Miranda</u> rights. Among other things, Feuer stated, in sum and substance, that he used a Yahoo! e-mail account in the name chris_sissyboy, and that he had not used his true personal information in setting up that account.

On May 9, 2008, the defendant filed a "Brief on Behalf of Defendant in Support of Motion to Suppress All Statements Made

by Defendant and All Evidence Seized as the Result of the
Unlawful Search of the Defendant's Work Cubicle, Desk, File
Cabinets and Surrounding Area and Motion in Limine to Exclude All
Photographs and Videos."  (Referred to herein as "Def.'s Br.").
In essence, the defendant makes three distinct arguments: (1) Any
statements made by the defendant after his arrest, as well as any
evidence obtained from a subsequent search of the defendant's
cubicle, must be suppressed because the defendant's statements,
including his execution of a <u>Miranda</u> waiver form and his
execution of a consent to search form, were not knowingly and
voluntarily made; (2) The Government should be precluded from
publishing images of child pornography to the jury because it has
not yet proved that such images depict actual children; and (3)
The charges against the defendant should be dismissed because he
was an unsophisticated computer user who did not know that images
of child pornography were being saved to his hard drive as he
viewed them over the Internet.

## DISCUSSION

**I.    <u>The Defendant's Motion to Suppress Statements and
Evidence Should Be Denied</u>**.

        A.    <u>The Defendant's Post-Arrest Statements Were Made
After a Knowing and Voluntary Waiver of His
Miranda Rights</u>.

The defendant was arrested on July 20, 2007, at his
cubicle at 26 Federal Plaza.  Shortly thereafter, the defendant
was advised of his <u>Miranda</u> rights, executed a written <u>Miranda</u>

4

waiver form, and proceeded to be interviewed.  The defendant initially stated, in sum and substance, that he did not want to answer questions about the internet.  Then, however, he stated, in sum and substance, "ask your questions, and maybe I'll answer."[1]  The agents who were interviewing the defendant did precisely that, and the defendant responded to some questions, and not to others.  The Government currently anticipates offering only one statement of the defendant in its case in chief — the defendant's acknowledgment that he used a Yahoo! e-mail account in the name chris_sissyboy, and that he had not used his true personal information in setting up that account.  The Government respectfully submits that the defendant's post-arrest statements were knowingly and voluntarily made and, accordingly, they are admissible.

The defendant acknowledges that he executed a <u>Miranda</u> waiver form, but apparently disputes whether the waiver was executed knowingly.  Specifically, defense counsel writes:

> "Mr. Feuer only initialed the Miranda waiver form and consent to search form because of his lack of knowledge with law enforcement and the criminal justice system coupled by his extremely simple lifestyle.  Mr. Feuer felt he was compelled to do so and therefore the waivers were not given knowingly, intelligently and voluntarily."

Indeed, defense counsel further writes that:

---

[1]The Government specifically disputes the assertion that "[i]n the case at bar, Mr. Feuer clearly stated his refusal to answer any questions and specifically reiterated [that refusal] by telling the agent especially any questions pertaining to the internet."  Def.'s Br. at 6.

> "Mr. Feuer's complete lack of knowledge of the legal system,
> law enforcement and life experiences as a whole rendered him
> incapable of waiving his rights intelligently, knowingly and
> voluntarily and the mere initializing and recitation of
> these rights clearly do not constitute the admissibility of
> any statement made by Mr. Feuer . . ."

Id. at 4-5. See also id. at 7 ("Mr. Feuer did not feel free to
refuse to sign the waiver and consent to search because he has no
prior knowledge and experience with the legal system, did so
because he felt intimidated.").

The defendant's motion is without merit. In order for
a Mirandized statement to be suppressed as involuntary, there
must be a finding, first, that coercive law enforcement tactics
were employed. See Colorado v. Connelly, 479 U.S. 157, 167 (1986)
("coercive police activity is a necessary predicate to the
finding that a confession is not 'voluntary' within the meaning
of the Due Process Clause of the Fourteenth Amendment"). If
there is a finding of coercive police activity, then and only
then may the reviewing court consider whether a defendant's will
was "overborne" by the circumstances surrounding the giving of
the confession. See id. at 166 ("The purpose of excluding
evidence seized in violation of the Constitution is to
substantially deter future violations of the Constitution. Only
if we were to establish a brand new constitutional right-the
right of a criminal defendant to confess to his crime only when
totally rational and properly motivated-could respondent's
present claim be sustained." (citation omitted)); accord

Dickerson v. United States, 530 U.S. 428, 434 (2000).  Put differently, no inquiry into the defendant's mental state is necessary unless and until there is a finding of police coercion. See, e.g., United States v. Salameh, 152 F.3d 88, 117-18 (2d Cir. 1998); United States v. Chrismon, 965 F.2d 1465, 1469 (7th Cir. 1992) ("A diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective.").  Here, even if the facts described in the defendant's brief were true, they would not amount to police coercion such that any further inquiry would be appropriate.

        To the extent the defendant argues that the investigating agents should have ceased questioning the defendant because, by refusing to answer certain questions, he was requesting counsel, see Def.'s Br. at 6, we disagree. "Invocation of the Miranda right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" Davis v. United States, 512 U.S. 452, 459 (1994) (quoting McNeil v. Wisconsin, 501 U.S., 171, 178 (1991)).  "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." Id., 512 U.S. at 459.  In this case, the defendant

7

did not even make an equivocal request for counsel, let alone one that would have required the agents to stop questioning him. Indeed, the defendant's brief argues only that the agents should have interpreted his refusal to answer certain questions as a request for counsel. There is no such requirement.

B.    The Defendant Voluntarily Consented to the Search of His Cubicle

A similar analysis applies to the defendant's motion to suppress evidence obtained through a search of his cubicle. The Government does not currently anticipate offering any evidence in its case in chief obtained from its search of the defendant's cubicle, aside from evidence obtained from the hard drive of the defendant's Government computer.[2] Nevertheless, the defendant's motion to suppress any such evidence should be denied because he knowingly and voluntarily consented to the search.

---

[2]It is unclear whether the defendant's motion extends to the search of his Government computer. In any event, the defendant lacked any reasonable expectation of privacy in his computer because it was, in fact, a Government computer and he had received explicit warnings that it was subject to search and monitoring. See generally O'Connor v. Ortega, 480 U.S. 709, 725-26 (1987) (plurality opinion) (holding that public employers may, consistent with Fourth Amendment, conduct workplace searches without a warrant and without probable cause when there are reasonable grounds to suspect work-related misconduct); see also United States v. Lifshitz, 369 F.3d 173, 187 (2d Cir. 2004); United States v. Ziegler, 474 F.3d 1184, 1192 (9th Cir. 2007); United States v. Thorn, 375 F.3d 679 (8th Cir. 2004)(concluding that government employee had no legitimate expectation of privacy in files downloaded from the Internet when government employer had express policy limiting computer usage to official government business and permitted random audits of computer usage to ensure proper use of government resources); United States v. Simons, 206 F.3d 392, 398 (4th Cir. 2000) (same).

When an individual consents to a search of a particular area in which he has a reasonable expectation of privacy, it is reasonable, and thus does not violate the Fourth Amendment, for law enforcement officers to conduct a search of that area. See United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995) ("[A]n individual may consent to a search, thereby rendering it reasonable."). Consent is valid if it is given voluntarily, and is not the product of duress or coercion, express or implied. Voluntariness is a question of fact given the totality of the surrounding circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973); Garcia, 56 F.3d at 422. Accordingly, the Second Circuit "has steadfastly avoided the adoption of any criterion that, in and of itself, would mandate a finding of involuntariness and thereby undermine a thorough analysis of all the relevant circumstances." United States v. Bye, 919 F.2d 6, 9 (2d Cir. 1990) (citing cases). When assessing the voluntariness of consent, courts should consider factors including the individual's age, intelligence and educational background, length and nature of questioning, and whether law enforcement officers engaged in coercion. See United States v. Jones, 154 F. Supp. 2d 617, 621 (S.D.N.Y. 2001) (citing Schneckloth, 412 U.S. at 226-27).

The defendant apparently does not dispute that he signed a consent to search form permitting the GSA agents to search his cubicle. Instead, he argues that, given his

9

unfamiliarity with the law and his rights, such consent could not have been knowing and voluntary.

Preliminarily, knowledge of the right to refuse consent is not required to find voluntariness. "So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." Garcia, 56 F.3d at 422. The Government has no affirmative duty to advise a person that he has the right to refuse consent to a search. See United States v. Crespo, 834 F.2d 267, 271-72 (2d Cir. 1987) (citing Schneckloth, 412 U.S. 218). See also United States v. Watson, 423 U.S. 411, 424-25 (1976) (finding that the absence of proof that the defendant knew that he could withhold his consent may be a factor in the totality of circumstances but is "not to be given controlling significance"); United States v. Ramirez, 903 F. Supp. 587, 590 (S.D.N.Y. 1995) ("The government need not show, to prove consent, that the subject knew he had a right to decline the request for a search."). Here, however, the consent to search form did advise the defendant of his right to refuse consent.

Even assuming, arguendo, that the defendant did not, in fact, understand the written consent form, the Fourth Amendment requires only that it was objectively reasonable for an officer to believe that he or she had obtained consent to search. See Florida v. Jimeno, 500 U.S. 248, 249-51 (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth

10

Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?").  In this case, upon the defendant's execution of a written consent form, it was plainly reasonable for the officers to conclude that the defendant had knowingly consented to a search of his cubicle area. Accordingly, the government respectfully submits that the defendant's motion to suppress any evidence obtained through such search should be denied.

> C.    <u>An Evidentiary Hearing is Not Warranted.</u>

The defendant's motion to suppress statements and evidence rests on factual claims that the Government disputes, namely that the defendant did not <u>knowingly</u> execute a consent to search form and a <u>Miranda</u> waiver form, and that the defendant did not <u>voluntarily</u> speak to the agents who arrested him.  While motions raising such factual disputes often require an evidentiary hearing, the Government respectfully submits that no such hearing is needed in this case.

It is well settled in the Second Circuit that a defendant seeking to suppress evidence bears the burden of demonstrating that there are disputed issues of fact that would justify an evidentiary hearing.  <u>See</u> <u>United States</u> v. <u>Gillette</u>, 383 F.2d 843, 848-49 (2d Cir. 1967).  "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and

nonconjectural to enable the court to conclude that contested
issues of fact . . . are in question." United States v. Pena,
961 F.2d 333, 339 (2d Cir. 1992)(quotation marks omitted).
However, in order to create a factual dispute in this context, a
defendant must submit sworn factual allegations from a person
with personal knowledge of the underlying facts. Gillette, 383
F.2d at 848-49.  For example, an affidavit of defense counsel
without such personal knowledge will not suffice. Gillette, 383
F.2d at 848-49; see United States v. Mason, No. 06 Cr. 80 (NRB),
2007 WL 541653, at *2 (S.D.N.Y. Feb. 16, 2007) ("An affidavit of
defense counsel who does not have personal knowledge of the facts
and circumstances surrounding the events at issue is an
insufficient basis for an evidentiary hearing."); United States
v. Shaw, 260 F. Supp. 2d 567, 570 (E.D.N.Y. 2003) ("Courts have
made clear that attorney affidavits are insufficient to warrant a
hearing."); United States v. Roberts, No. 01 Cr. 410 (RWS), 2001
WL 1602123, at *10-11 (S.D.N.Y. Dec. 14, 2001) ("This Circuit has
repeatedly made clear that attorney affidavits are insufficient
to trigger a hearing, and that a defendant is required to first
allege facts which, if proved, would require the granting of
relief."); United States v. Ahmad, 992 F. Supp. 682, 685
(S.D.N.Y. 1998).  As the court explained in United States v.
Garcia:

> Experience shows that unless such serious charges are
> initiated upon the sworn statement of persons having
> personal knowledge of the facts, a great deal of time

> of the parties and the Court is frequently wasted upon
> unnecessary, expensive and protracted suppression
> hearings, all for the reason that the attorney
> demanding suppression merely upon his own say-so often
> discovers only at the hearing that he had been misled
> by unsworn misrepresentations of his clients, which
> they would be unwilling to swear to in an affidavit,
> particularly if they were questioned closely by their
> counsel and warned of the consequences of perjury.

272 F. Supp. 286, 289 (S.D.N.Y. 1967).

Here, the defendant has not even submitted an affidavit from defense counsel, let alone an affidavit from the defendant himself, and relies solely on his brief to create a disputed issue.  Moreover, the allegations in his brief are not the sort of "definite, specific, detailed, and nonconjectural" statements that create a genuine issue of fact.  United States v. Pena, 961 F.2d at 339.  Rather, they are conclusory allegations that should be rejected without a hearing.

### D.    The Defendant's Motion to Suppress is Untimely.

Finally, the defense counsel's motion to suppress is untimely.  It is well established that, pursuant to Rules 12(c) and 12(e) of the Federal Rules of Criminal Procedure, "[t]he failure to file a timely motion constitutes a waiver." United States v. Howard, 998 F.2d 42, 52 (2d Cir. 1993) (affirming district court's refusal to reach merits of suppression motion on ground it was untimely).  Rule 12(e) makes clear that a defendant must file all pretrial motions by the motion date set by the district court pursuant to Rule 12(c).  See id.; United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993), cert. denied, 511 U.S.

13

1130 (1994) (affirming denial of suppression motion on ground that it was untimely); see also United States v. Hart, 729 F.2d 662, 665 (10th Cir. 1984) (claim that confession was obtained in violation of Miranda was waived by failure to make motion to suppress prior to trial), cert. denied, 469 U.S. 1161 (1985).

At an April 2, 2008 conference in this case, Your Honor asked defense counsel whether he anticipated filing any motions. Defense counsel represented that he did not, "due to the unique nature of this case," and the fact that it involved a Government computer. Tr. of April 2, 2008 Conf., at 3. Accordingly, in reliance on that representation, Your Honor set a trial date and a schedule for filing any significant motions in limine. See Tr. April 2, 2008 Conf., at 3 ("If there are no motions, I'm going to set a trial date in this case."). There is no reason defense counsel could not have anticipated filing the instant motion to suppress at that time. The existence of post-arrest statements by the defendant, as well as the circumstances surrounding those statements, was disclosed to the defense in the Government's initial discovery letter in this case on November 5, 2007. The results of the Government's search of the defendant's cubicle and computer have been disclosed since in its initial production of documentary discovery on December 4, 2007. Nevertheless, defense counsel has waited until now to make known its intent to seek

14

suppression of such statements and evidence.[3]  Such an untimely motion should be deemed waived.

## II. __The Defendant's Motion To Preclude Publication of Images to the Jury Should Be Denied Because Whether the Images Portray Actual Children Presents an Issue for the Jury__.

The defendant argues that the Government should be precluded from publishing any images to the jury that it alleges contain child pornography unless the Government has first proven that such images depict actual children.  Specifically, the defendant writes:  "Since the government in the case at bar, has failed to provide defendant any expert reports, identities or other such proofs to establish actual children were depicted in the photographs, the unsubstantiated and unauthenticated photographs must be suppressed and not published to the jury."  Br. at 9.  The defendant is incorrect.

Plainly, the images and videos found on the defendant's computer are __relevant__ evidence of whether or not he received child pornography.  One of the elements the Government will be required to prove at trial is that the images depict actual

_____

[3]The Government also notes that the defendant's instant motion was not filed before the initial due date set by the Court for motions in limine, which was scheduled for April 25, 2008. Defense counsel sought an extension of that deadline based on his claim that the Government had delayed unduly his ability to prepare motions by not making a copy of the defendant's hard drive available to his expert.  See Letter from Richard P. Galler to Mark Lanpher, dated Apr. 17, 2008; Tr. of April 18, 2008 Conf. at 23-24.  Plainly, any such delay should have had no impact on defense counsel's ability to prepare the instant suppression motion.

children, and there is no better proof of this than the images themselves.  See United States v. Pabon-Cruz, 255 F. Supp. 2d 200, 206 (S.D.N.Y. 2003).  Indeed, in a case where the defendant disputed whether videos containing child pornography depicted actual children, the Second Circuit held that the jury could view the videos and conclude – without more – that they depicted actual children. United States v. Irving, 452 F.3d 110, 121-22 (2d Cir. 2006) (rejecting claim that the government must present extrinsic evidence to prove the reality of children in video images).  The Second Circuit specifically rejected the defendant's claim that expert testimony is required in light of the Supreme Court's decision in Ashcroft v. Free Speech Coal., 535 U.S. 234, 244 (2002).  Other Circuits that have addressed this issue have similarly held that no extrinsic evidence is required to prove that images appearing to contain child pornography depict actual children.  See United States v. Farrelly, 389 F.3d 649, 654 n. 4 (6th Cir. 2004) ("[A]t this time, it appears that no circuit requires that expert evidence be introduced to prove the reality of children portrayed in pornographic images."); see also United States v. Rodriguez-Pacheco, 475 F.3d 434, 437 (1st Cir. 2007); United States v. Slanina, 359 F.3d 356, 357 (5th Cir. 2004) (per curiam) (holding extrinsic evidence was not required to prove reality of children in images); United States v. Kimler, 335 F.3d 1132, 1142 (10th Cir. 2003) ("Juries are still capable of distinguishing

16

between real and virtual images....”); United States v. Deaton, 328 F.3d 454, 455 (8th Cir. 2003) (upholding jury determination that images depicted real children even where no additional evidence was presented on the issue).[4]

The defendant essentially argues that, without extrinsic proof that images depict actual children, they cannot be authenticated as relevant and are thus inadmissible pursuant to Federal Rule of Evidence 901(a). But the Government will authenticate the images and videos as having been obtained from the defendant's computer. There is no separate requirement that the Government authenticate each image as depicting a real child prior to showing it to the jury. Indeed, numerous Circuit Courts of Appeal have specifically considered and rejected this argument. See, e.g., United States v. Salcido, 506 F.3d 729 (9th

---

[4] Notably, although no such proof is required, the Government anticipates offering several forms of evidence beyond individual images from which the jury will be able to conclude that the images found on the defendant's computer depict actual children. First, numerous “series” of images were recovered, meaning that, for example, ten pornographic images of the same pre-pubescent girl were recovered. The fact that the same children were depicted in picture after picture decreases the plausibility that any one of the pictures was computer-generated. Second, numerous videos of child pornography were recovered from the defendant's computer. As the Second Circuit has held, a jury can conclude, without expert testimony, that such videos depict actual children. See United States v. Irving, 452 F.3d 110, 121-22. Third, the government expects to call two law enforcement witnesses who will testify that they recognize the children in numerous images recovered from the defendant's computer as actual children who they have met in the course of prior investigations.

Cir. 2007) (concluding that government is not required to prove that images depict actual children prior to publishing to jury); United States v. Nolan, 818 F.2d 1015, 1016-17 (1st Cir. 1987) ("Whether the pictures were the kind of visual depictions the law forbids, i.e., ones involving the 'use' of actual minors engaging in sexually explicit conduct, 18 U.S.C. § 2252(a)(2)(A), goes more properly to whether the government presented sufficient evidence to prove all the elements of its case than to 'authentication.' "), abrogated on other grounds by United States v. Hilton, 363 F.3d 58 (1st Cir. 2004), withdrawn, United States v. Hilton, 386 F.3d 13 (1st Cir. 2004); United States v. Sheldon, 223 Fed. Appx. 478, 483 (6th Cir. 2007) (noting that the government is not required to "pre-screen, or pre-authenticate, child pornographic images to make sure that they are indeed real").

Accordingly, the Government respectfully submits that the Court should deny the defendant's motion to preclude publication of the images of child pornography recovered from the defendant's Government computer. The Government further submits that the method of publishing pictures to the jury proposed in the Government's April 25, 2008 letter to the Court appropriately balances the evidentiary significance of the images at issue and the potential for any unfair prejudice to the defendant of showing such images to the jury.

18

### III. **The Defendant's Mental State is an Issue for the Jury**.

Finally, the defendant argues that the charges in this case should be dismissed because "Mr. Feuer is an 'unsophisticated' computer user [who] had absolutely no idea and knowledge of the existence of the cache file and therefore had no knowledge has to possession of alleged stored child pornography." Def.'s Br. at 10.  Preliminarily, the Government respectfully submits that the evidence at trial will refute the defendant's suggestion that he was an unsophisticated computer user who unknowingly saved child pornography to his computer.

More important, the defendant's motion raises an issue of fact for the jury, not a question of law for the Court.  An indictment that is valid on its face cannot be challenged on the ground that it was based on inadequate or incomplete evidence. Costello v. United States, 350 U.S. 359, 363 (1956).  The Indictment in this case is clearly sufficient because it contains the elements of the offense, notice to the defendant of the charges he must be prepared to meet, and information sufficient to protect the defendant from the risk of double jeopardy. United States v. Bailey, 444 U.S. 394, 414 (1980); United States v. Covino, 837 F.2d 65, 69 (2d Cir. 1988).  Indeed, the defendant does not challenge the Indictment on its face; he "apparently confuses the court for a jury, and presents his intended defense."  United States v. Hart, No. 93-CV-407, 1994 WL 396180 (N.D.N.Y. 1994).  Simply put, the defendant's argument is

misplaced and should be rejected.  <u>See</u> <u>id.</u> ("This argument is one that should be made to the jury at trial, rather than to the court at this preliminary stage.").

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's motion to suppress without a hearing, and deny the defendant's motions in limine.

Dated:    New York, New York
          May 19, 2008


                    Respectfully submitted,

                    MICHAEL J. GARCIA
                    United States Attorney


          By: /s/ Mark Lanpher
                    MARK LANPHER
                    DANIEL STEIN
                    Assistant United States Attorneys
                    (212) 637-2399/2407